IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) No. 2:06-CR-0299 |
| | ) |
| vs. | ) |
| | ) |
| | ) Judge Robert J. Colville |
| ALVIN M. THOMAS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM ORDER OF COURT**

Robert J. Colville, United States District Judge

Before the Court is the "Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Request for Emergency Consideration" ("Motion") (ECF No. 393) filed by Defendant Alvin M. Thomas.[1]  Mr. Thomas seeks a reduction of his sentence for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Thomas asserts that he pre-diabetic status with a recorded A1C of 6.3, puts him at increased risk of death or serious illness from COVID-19, and that his health issues constitute extraordinary and compelling reasons justifying his early release from  FCI Yazoo City Low.  Mot. 1, ECF No. 393. For the reasons that follow, the Defendant's Motion is DENIED without prejudice.

**I.     Background**

On February 23, 2010, Mr. Thomas pled guilty to Counts One, Two and Three of the Indictment (ECF No. 253), specifically, conspiracy to distribute and possess with intent to

---

[1] The defendant recently filed a pro se Compassionate Release motion at ECF No. 381 and a pro se supplement at ECF No. 382. A counseled supplement was subsequently filed at ECF No. 393.

distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846 (Count I) and distribution and possession with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii).

On September 1, 2010, the sentencing judge, the Honorable Gustave Diamond, sentenced Mr. Thomas to a total term of incarceration of 240 months at each of Counts One, Two and Three of the indictment to be served concurrently. Judgment, ECF No. 294. The Court also imposed a term of supervised release of 10 years consisting of 10 years at each of Counts One, Two and Three to run concurrently. *Id*. Mr. Thomas is currently serving his sentence at FCI Yazoo City (Low) in Yazoo City, Mississippi. Mot. 1, ECF No. 393. To date, Mr. Thomas has served approximately 13 years of incarceration, and has served 68.4% of his sentence as of May 6, 2020. *Id.* at 2, Sentencing Computation, ECF No. 393-2. Mr. Thomas asserts that his expected release date is September 29, 2022. *Id.* at 2. He requests his sentence be reduced to time served and that he immediately be released to begin serving his previously determined supervised release.

Mr. Thomas filed his first Motion on May 27, 2020, ECF No. 381, and upon being appointed counsel, his second motion was filed on July 14, 2020. The Government filed its Response (ECF No. 397) on July 2, 2020 and on August 5, 2020, Mr. Thomas filed a Reply (ECF No. 399). His Motion is thus ripe for disposition.

**II.    Discussion**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). Courts have specific authorization under the First Step Act's amendment of 18 U.S.C. § 3582 to modify a defendant's term of imprisonment where the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The reviewing

court must also consider: "(1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Here, while the Court finds that Mr. Thomas's motion is properly before it, the Court is unable to conclude that Mr. Thomas's current health condition rises to an "extraordinary and compelling'" level. As such, compassionate release is foreclosed.

### A. Administrative Exhaustion

Section 3582(c)(1)(A)'s administrative exhaustion requirement provides that a defendant may bring a motion seeking compassionate release only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "In other words, a defendant must first file a request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their initial request was filed with the warden." *United States v. Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The Third Circuit has explained that, in light of ongoing pandemic, "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government concedes the motions are ripe and the court may consider them. ECF No. 397 at 2. Here, the defendant submitted two compassionate release requests to the warden on April

17 and May 22 of 2020, which appear to have gone unanswered. Because the defendant has waited "30 days from the receipt of such a request by the warden" before filing the current motions, they are ripe and this Court may consider them. 18 U.S.C. § 3582(c)(1)(A); *United States v. Rodriguez*, ―― F.Supp.3d ――, ――, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act...it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision— when their warden never responds to their request for relief.");

### B.  "Extraordinary and Compelling" Reasons

Next, the Court must determine whether Mr. Thomas's pre-diabetes, either in isolation or in combination with the ongoing COVID-19 pandemic, is an "extraordinary and compelling" reason that warrants release under § 3582(c)(1)(A)(i). The Application Notes to § 1B1.13 of the Guidelines speak to this particular requirement and outline two (2) different medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses;[2] and (2) non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. Under the "non-terminal illness" option, the Court finds that Mr. Thomas's current condition—both in isolation and when considered in combination with the ongoing COVID-19 pandemic—does not rise to an "extraordinary and compelling" level.

With respect to what constitutes "extraordinary and compelling" circumstances, the Application Notes to the Sentencing Commission's Policy Statement to 18 U.S.C. § 3582(c)(1)(A) provide, in pertinent part, that a defendant's non-terminal illness may constitute an extraordinary and compelling reason where "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within

---

[2] The Court finds that Mr. Thomas does not qualify for relief under the "terminal illness" category as set out in Application Note (1)(A)(i).

4

the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii).[3]

Here, in considering Mr. Thomas's prediabetes in isolation, the Court finds that his condition is not sufficiently serious in nature to warrant release. The record indicates that he has access to appropriate care. See ECF No. 393-3. In addition, nothing in the record indicates that his prediabetes prevents him from being able to "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, cmt. n.(1)(A)(ii).

Similarly, in considering Mr. Thomas's prediabetes in combination with the ongoing COVID-19 pandemic, the Court is unable to find that such combination of concerns warrants relief. In interpreting caselaw involving requests for compassionate release in the context of the current global pandemic, the Honorable J. Nicholas Ranjan of the Western District of Pennsylvania has explained:

> [A] prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

*United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020); *see also United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("In the absence of a deadly pandemic that is deadlier to those with [defendant's] underlying conditions, these conditions would not constitute 'extraordinary and compelling reasons.' It is the confluence of COVID-19 and [defendant's] health conditions that makes this circumstance extraordinary and compelling.").

---

[3] To find compelling and extraordinary reasons, the Policy Statement further requires that a court find that a defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13, cmt. n.(1).

The court has reviewed Mr. Thomas's BOP medical records submitted by him and the government. Mr. Thomas is 57 years old and suffers from prediabetes. Mot. 3, 18; ECF No. 393. Mr. Thomas's medical records confirm this. Mot. Exs. 2, 3, ECF No. 393-3, 393-4. The parties do not dispute that in order to be diagnosed with diabetes, a defendant's A1C must be 6.5 percent or higher on two different occasion.[4] Mr. Thomas has provided two tests for our consideration, one dated January 18, 2018 (6.3) and one on February 25, 2020 (6.2). The government has provided further medical records which show the following results:

| Date | A1C |
| --- | --- |
| 10-24-16 | 6.0 |
| 01-04-18 | 6.3 |
| 07-24-19 | 5.9 |
| 09-11-19 | 6.0 |
| 02-06-20 | 6.2 |

(ECF No. 398-4). Mr. Thomas states he needs counseling for his prediabetic condition, and for his "many medical conditions, including prediabetes, but he is not getting it." ECF No. 393. Yet the record shows he has had access to medical care and the medical records refer to counseling regarding weight loss, diet and exercise. ECF No. 393-3 ("prediabetes with A1C of 6.0. Wt loss, diet and exercise, avoid tobacco advised"). There is no indication that Mr. Thomas's condition substantially diminishes his ability to provide self-care during the pandemic while incarcerated. U.S.S.G. 1B1.13 cmt. 1. Although Mr. Thomas complains that his current housing situation and

---

[4] An A1C test "reflects an average blood sugar level for the past two to three months. The higher the A1C level, the poorer blood sugar control and the higher risk of diabetes complications." *United States v. Mathe*, Nos. 14-528, 17-92, 2020 WL 3542177, at *2 n.16 (E.D. Pa. June 30, 2020). If the A1C level is between 5.7 and less than 6.5, then that person is in the pre-diabetes range. *Id.* at *2 n.17.

restrictions prevent him at a certain level from getting exercise, thus making it more likely he could become diabetic, we must look to his current condition, not a speculative future one.

Importantly, the Centers for Disease Control and Prevention has not listed prediabetes as a condition causing "higher risk for severe illness from COVID-19," although it has listed diabetes Type-2.  Centers for Disease Control and Prevention, *Who is at Increased Risk for Severe Illness?: People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020). Nor does prediabetes meet the standard for conditions which "might be an increased risk" for severe illness from COVID-19.  *Id.*  Thus, Mr. Thomas has not proven his current condition "substantially diminish[es]" his ability "to provide self-care within the environment of a correctional facility," even in the context of the pandemic.  For this reason, he does not satisfy subdivision 1(A) of the Sentencing Commission's definition of "extraordinary and compelling reasons" for release.  U.S.S.G. §1B1.13 app. Note 1.

Moreover, we are guided by the plethora of recent cases – too numerous to be repeated here -- cited to by the Government wherein federal courts have denied compassionate release to defendants whose A1C levels indicate they are prediabetic.  ECF No. 397 at 6-8.  Although Mr. Thomas cites to a handful of cases in his reply wherein compassionate release was granted to prediabetics, each of those defendants had other medical conditions which the CDC recognizes as having a higher risk of complications from COVID-19. *Cotton v. United States*, No. CR 16-20222-8, 2020 WL 3488752, at *3 (E.D. Mich. June 26, 2020) (prediabetes, obesity, and asthma); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (prediabetes and obesity); *United States v. Sosa*, No. 19-CR-39-02-JD, 2020 WL 2227038, at *1 (D. N.H. April 21, 2020), report and recommendation adopted, 2020 WL 2219173 (D. N.H. May

6, 2020) (prediabetes and obesity); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D. D.C. Apr. 21, 2020 (prediabetes and hypertension); *United States v. Coles*, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (hypertension, prediabetes, prostate issues, bladder issues, and dental infection); *United States v. Williams,* 2020 WL 1751545 (N.D. Fla. 2020) (coronary disease, peripheral vascular disease, congestive heart failure, end-stage renal disease, hyperlipidemia, and prediabetes).

Mr. Thomas's concerns regarding COVID-19 do not warrant a reduction of his sentence. He has not controverted with any evidence the substantial steps that the BOP is taking to protect the health and safety of both inmates and staff at all of the federal prisons. BOP website at: www.bop.gov/coronavirus/index.jsp. BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 13, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.* His general concerns and fear of contracting COVID-19 do not suffice. Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the

criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

Further, FCI Yazoo City Low has a total of 1,730 inmates, and while at one point its positive confirmed cases was high, currently it has zero confirmed active cases among inmates and 4 confirmed active cases among staff.  Federal Bureau of Prisons, COVID-19 Tracker, https://www.bop.gov/coronavirus/ (last visited August 13, 2020).  The existence of COVID-19 at FCI Yazoo City Low alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

For the reasons discussed above, it is clear that Mr. Thomas does not suffer from medical conditions that place him at a high risk of grave illness and death if he were to become infected with COVID-19.  It is further clear that he does not face an actual, non-speculative risk of COVID-19 exposure at FCI Yazoo City Low.  The Court thus finds that the combination of the COVID-19 pandemic and Mr. Thomas's preexisting medical condition does not constitute an "extraordinary and compelling reason" for a reduction in Mr. Thomas's sentence.

While the Court does not doubt the genuineness of Mr. Thomas's concerns for his health and safety, his concerns at this moment in time are too generalized to be considered "extraordinary and compelling" for these purposes.[5] Because this factor alone forecloses relief, the Court will decline to consider whether or not the § 3553(a) factors further prevent this Court from granting the Defendant's Motion.[6]

### C. Deferral to the BOP

Because this Court is unable to modify Mr. Thomas's sentence pursuant to 18 U.S.C. § 3582, the Court cannot direct the placement of Mr. Thomas at this time. *See United States v. Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.). This Court will thus defer to the BOP's "exclusive authority to determine if an inmate should be placed in such a setting and, if so, for how long." *Id.* (quoting *United States v. Parks*, No. 17-cr-137, 2019 WL 5085968, at *1 (N.D. Ohio Oct. 10, 2019).

### III. Conclusion

For the reasons discussed above, it is hereby ORDERED that Defendant Alvin Thomas's Emergency Motions to Reduce Sentence Pursuant to the Compassionate Release Statute 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 381, 393) are DENIED without prejudice.

---

[5] The Application Notes to § 1B1.13 of the Guidelines also state that "other reasons" might warrant release. U.S.S.G. § 1B1.13, cmt. n.(1)(D). Because this provision of the Guidelines has not been updated since the First Step Act was enacted, there is a dispute as to whether a court may define what fits into the "other reasons" category, or if that determination should be left to BOP. *See Hammond*, 2020 WL 2126783, at *4 n.5. However, even if this Court were to consider Mr. Thomas's Motion under the "other reasons" category, *Raia*'s holding still forecloses relief. As stated above, Mr. Thomas's situation—as currently presented to the Court—remains too generalized in nature to rise to an "extraordinary and compelling level." And that fact stands regardless of whether the Court views that situation under the "non-terminal illness" category or under the "other reasons" category.

[6] Generally, once a court finds that an "extraordinary and compelling" reason warrants release, it must also consider whether release is appropriate in light of the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, No. 16-156, 2020 WL 1940809, at *10 (W.D.N.Y. Apr. 22, 2020). We note the offenses at issue are serious in nature. defendant has three prior drug trafficking convictions, including a prior federal drug trafficking conviction.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 17, 2020

cc/ecf: All counsel of record